

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

September 12, 2025

**VIA ECF**

Hon. Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *United States v. Yehuda Ringel*, 25-mj-00167

Dear Judge Levy:

We represent defendant Yehuda Ringel in the above-captioned case. We write to move for Mr. Ringel's pretrial release pursuant to the least restrictive combinations of conditions that can reasonably assure the safety of the community and his appearance in this case. *See* 18 U.S.C. § 3142(c).[1]

**I.    The Government Cannot Meet Its Burden Under the Bail Reform Act**

We respectfully submit that the following conditions are sufficient to reasonably assure Mr. Ringel's appearance during this case and ameliorate any risk of future dangerousness asserted by the government:

    (1)    A $2 million bond, secured by three properties, and co-signed by four financially responsible people, including his brother and sister-in-law, and two close family friends;

    (2)    Home detention with electronic monitoring at Mr. Ringel's brother's home in Staten Island; only travel outside the house would be for employment, and pre-arranged medical and legal visits, as authorized by Pretrial Services;

    (3)    Continued surrender of any travel documents, and an agreement not to secure new travel documents;

    (4)    Strict Pretrial Services supervision; and

---

[1] Mr. Ringel is presently held without bail pursuant to a May 9, 2025 temporary order of detention. This Court's review of that detention order is *de novo*. *See, e.g., United States v. Molina*, No. 11-CR-528 JFK, 2012 WL 3564013, at *3 (S.D.N.Y. Aug. 16, 2012) (review of prior bail determination *de novo*).

   (5)  Electronic devices limited to a single cellular telephone monitored by Pretrial Services; all other people living in the home will maintain their electronic devices as password protected, and would attest that they will not share the passwords with Mr. Ringel.

  The Bail Reform Act of 1984 requires pretrial release on a personal recognizance bond "unless the [Court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In making this determination, the Court should consider the following factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* at § 3142(g). Even if the Court finds that release on the defendant's personal recognizance creates a risk of flight or a danger to the community, the law still favors pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *accord United States v. Zherka,* 592 F. App'x 35, 36 (2d Cir. 2015) (quoting *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007)).

  There is a **_presumption of release_** as to Mr. Ringel under the Bail Reform Act. *Cf.* 18 U.S.C. § 3142(e)(3), (j). And, to detain him, the government must demonstrate by clear and convincing evidence that he poses a danger to the safety of the community, or by a preponderance of the evidence that he "is likely to flee," and that there are no "conditions or a combination of conditions" to ameliorate those risks. 18 U.S.C. § 3142(c)(1), (f). The government cannot do so here.

  By all accounts, Mr. Ringel has a spotless record prior to this case. He has no criminal history. He has never had contact with law enforcement. He has no history of violence, or threatening conduct. And there are no allegations of violence against him now. While Mr. Ringel is charged with possession of child pornography, that itself does not amount to an unmitigated risk of future dangerousness. He has never touched a child inappropriately; the government does not allege otherwise.

  Mr. Ringel also does not present an unmitigated risk of flight. While Mr. Ringel does not live in the United States, he has strong ties here: close family and friends who are willing to risk their homes, and their family's financial wherewithal on Mr. Ringel's bail because they know he would not flee. That overwhelming moral suasion is more than sufficient. Because the government cannot meet its burden of demonstrating that there are no "condition, or combination of conditions" that will "reasonably assure" the Court, Mr. Ringel's release is required under the Bail Reform Act. *See* 18 U.S.C. § 3142(c), (f).

  The law is clear: "it is only a limited group of offenders who should be denied bail pending trial." *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (quotation marks and citations omitted); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (pretrial detention is a drastic measure, narrowly reserved for "extreme case[s]"); *United States v. Scarpa*,

815 F. Supp. 88, 91 (E.D.N.Y. 1993) (pretrial detention "has been and should remain the exceptional practice") (emphasis supplied). Mr. Ringel is not one of them. This Court should order his pretrial release on the proposed substantial bail conditions presented.

## II. Mr. Ringel's Bail Package Ameliorates Any Flight Risk or Danger to Other Persons or the Community

### A. *The Proposed Conditions of Release Reasonably Assure the Safety of the Community*

Mr. Ringel is charged in a Criminal Complaint with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). He was arrested at John F. Kennedy International Airport on May 8, 2025 when he flew to the United States to attend his brother's wedding. Mr. Ringel was stopped at the airport, and following a search of his telephone, he was arrested for possession of child pornography allegedly found there. Importantly, there are no allegations that Mr. Ringel touched, filmed or otherwise harmed any children—*ever*. Indeed, Mr. Ringel has no history of violence; he has no criminal history at all.

Courts in this Circuit have routinely set bail for defendants charged with similar child pornography offenses. *See United States v. Egelman*, No. 22-CR-375 (JS) (E.D.N.Y. 2022) (releasing defendant charged with possession of child pornography); *United States v. Fitzsimmons*, No. 21-CR-00591 (JS) (E.D.N.Y. 2021) (releasing defendant charged with distribution of child pornography); *United States v. Belcher*, No. 21-mj-1596 (S.D.N.Y. 2022) (defendant charged with child pornography offenses released on bond, with consent of the government); *United States v. Pamperien*, No. 20-CR-275 (NSR) (S.D.N.Y. 2020) (defendant charged with child pornography offenses released on bond); *United States v. Tassone*, No. 19-CR-910 (S.D.N.Y. 2019) (NSR) (defendant charged with child pornography offenses released on bond, with consent of the government); *United States v. Campos*, No. 17-CR-525 (CS) (S.D.N.Y. 2017) (defendant charged with child pornography offenses released on unsecured personal recognizance bond); *United States v. Szucs*, No. 17-CR-373 (KMK) (S.D.N.Y. 2016) (defendant charged with child pornography offenses released on unsecured personal recognizance bond).

Indeed, even in cases that include allegations of far more egregious sexual offenses, defendants are frequently released on conditions similar to those proposed here. *See, e.g., United States v. Fletcher*, No. 21-CR-227 (ERK) (E.D.N.Y. 2021) (releasing defendant on stringent conditions of home confinement, telephonic monitoring, with three sureties, where defendant was charged with sex tourism involving minors in violation of 18 U.S.C. § 2423); *United States v. Daskal*, No. 21-CR-110 (E.D.N.Y. 2021) (defendant charged with enticing a minor to engage in sexual activity and transporting the minor across state lines for the purpose of engaging in sexual activity, and released on conditions similar to those proposed here); *United States v. Galarza*, No. 19-CR- 508 (BMC) (E.D.N.Y. 2019) (defendant released on bond, although charged with the presumption offenses of 18 U.S.C. § 2251(c) (sexual exploitation of a child), § 2251(e) (conspiracy and attempt to sexually exploit a child), § 2252(a)(1) (transportation of child pornography) and § 2252(a)(3)(B) (sale of child pornography); *United States v. Hadden*, No. 20-CR-468 (S.D.N.Y. 2020) (defendant, a doctor charged with sexually abusing his patients, including at least one minor,

over a 20-year period, released on bail requiring three co-signers, secured by the defendant's primary residence, GPS monitoring, associational bars with the victim, and travel restrictions); *United States v. Morin*, No. 10-CR-506 (N.D.N.Y. 2010) (defendant charged with "sexual enticement of a minor," the court released the defendant pursuant to a $100,000 personal recognizance bond, secured by two properties, travel restrictions, and associational bars with the victim. *United States v. McDarrah*, No. 05-CR-1182 (S.D.N.Y. 2005) (defendant was charged with enticing a minor to engage in sexual activity, and released pursuant to a personal recognizance bond co-signed by two sureties, partially secured by $5,000 in cash, associational bars with the victim, and significant travel restrictions). So too bail should be set for Mr. Ringel accordingly.

In any event, the substantial bail package proposed is tailored to mitigate any lingering risk. Mr. Ringel will be confined to his brother and sister-in-law's home in Staten Island, other than for employment, or legal and medical visits. His cellular telephone use will be monitored by Pretrial Services' monitoring software, precluding him from engaging in any behavior similar to that alleged in the criminal complaint. He will have little opportunity to commit future crimes. *United States v. Esposito*, 309 F. Supp. 3d 24, 31 (S.D.N.Y. 2018) (ordering defendant's pretrial release subject to strict conditions as the "danger Esposito poses to the community can be reasonably mitigated by conditions of release," although finding that "there is sufficient evidence that Esposito has significant involvement and influence in violent activities"); *United States v. Dreier*, 596 F. Supp. 2d 831, 833-35 (S.D.N.Y. 2009) (releasing defendant on substantial conditions, including home confinement, and a $10 million personal recognizance bond, despite finding "that [the defendant], if released without conditions, would pose a genuine risk. . . .").

Nor would he—doing so would risk financial ruin to his brother and sister-in-law, and to the family friends who have all offered to post their properties as security for the bond. Mr. Ringel's brother and sister-in-law, both work hard to support their families. His brother is a small business owner, who founded and manages an event and entertainment business. Mr. Ringel's sister-in-law is an administrator at an agency that assists individuals with developmental disabilities, and manages a team of 20 people. They support six children, and have lived in the home they are offering to post for the last eight years. It has approximately $350,000 in equity. Mr. Ringel's other two sureties are both family friends who have been neighbors with Mr. Ringel's brother for more than a decade. They have each offered to post an apartment in Brooklyn. Each apartment has between $800,000 and $900,000 in equity. And both family friends are professionals who have built their businesses for years to reach the financial stability they enjoy today. One family friend is the managing partner of a small accounting firm in Brooklyn. And the other runs a small business that provides marketing services, and invests in real estate and other businesses in New York. Mr. Ringel would not squander the support of his family and friends. The risk of financial ruin to the four sureties provides powerful moral suasion for Mr. Ringel. *See, e.g., United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) ("Appropriate factors to consider when weighing whether a proposed suretor exercises moral suasion vary from case to case, but may include the strength of the tie between the suretor and defendant (i.e. family or close friend, close or estranged), the defendant's roots in the community, and the regularity of contact between suretor and defendant"); *United States v. Sierra*, No. 99-CR-962, 1999 WL 1206703

(S.D.N.Y. Dec. 16, 1999) (in a presumption case, granting bail based, in large part, on the moral suasion exerted by friends and family acting as bail suretors).

The substantial bail package, with deterrent conditions, and powerful moral suasion effectively addresses any risk of dangerousness that Mr. Ringel's release could pose. The government "ha[s] not proven by clear and convincing evidence that no conditions could be set that reasonably assure the safety of the community." *United States v. Paulino*, 335 F. Supp. 3d 600, 615 (S.D.N.Y. 2018) ("while the Government has shown that Paulino presents some danger to the community, they have not proven by clear and convincing evidence that no conditions could be set that reasonably assure the safety of the community").

### B. *Mr. Ringel Does not Pose an Unmitigated Risk of Non-Appearance*

The government similarly cannot bear its burden of demonstrating by a preponderance of the evidence that there are no "conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987).

Although Mr. Ringel is a foreign national, he has strong ties to the United States. His brother is a naturalized citizen, who has lived in New York for more than two decades, whose wife was born in New York, and whose children are all here in New York. That brother has offered to post his family home in Staten Island, and thus his family's financial future, to reasonably assure the Court of Mr. Ringel's continued appearance. Collectively, Mr. Ringel's sureties (his brother and sister-in-law, and two close family friends, all of whom live in New York City) provide tremendous moral suasion. They would all face destabilizing financial ruin in the event of Mr. Ringel's flight—a price Mr. Ringel would never foist upon his nearest and dearest. So too, the stringent conditions that would effectively preclude Mr. Ringel from fleeing undetected are more than sufficient to reasonably assure the Court of his continued appearance throughout this case. *See Madoff*, 586 F. Supp. 2d at 249 ("The [Bail Reform] Act does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance."). The Court should order Mr. Ringel's release pursuant to the proposed conditions.

Indeed, courts in this district have frequently released defendants with similar, or less substantial, local ties pursuant to comparable bail conditions. *See, e.g., United States v. Hwa*, No. 18-CR-538 (MKB) (E.D.N.Y. 2018) (releasing defendant, known as Roger Ng, indited in largest foreign bribery case in history, where the defendant was a foreign national, with no U.S. ties, who was extradited to the United States for prosecution); *United States v. Galitsa*, No. 17-CR-00324 (VEC), 2016 WL 11658188, at *1 (S.D.N.Y. July 28, 2016) (releasing, over the government's objection, a defendant arrested for illegal reentry into the United States); *United States v. Webb*, No. 15-CR-252 (PKC) (E.D.N.Y. 2015) (defendant, a citizen of the Cayman Islands who was extradited from Switzerland, released on bond in international FIFA bribery case); *United States v. Seng*, No. 15-CR-706 (VSB) (S.D.N.Y. 2015) (defendant, arrested for large-scale bribery of a United Nations official while boarding his private jet to leave the country, released on house arrest although he was a citizen of China, worth $1.8 billion, had access to private jets, and had no ties to the U.S.).

Nor is the potential presence of an ICE detainer a basis for Mr. Ringel's permanent detention as a flight risk pursuant to § 3142. Any immigration consequences Mr. Ringel may face have no bearing on the analysis of whether he, of his own volition, poses a risk of flight under the Bail Reform Act. *See United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019) (The presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny BRA pretrial release. . . . In other words, the district court must apply the BRA as it would to any other criminal defendant, notwithstanding the existence of any parallel proceedings.") (internal quotation marks and citation omitted); *accord United States v. Soriano Nunez*, 928 F.3d 240, 244–45 &n.4 (3d Cir. 2019) ("individuals on release arising from other offenses and non-citizens are treated the same as other pretrial criminal defendants under the BRA"; "Thus, the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny BRA pretrial release."); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337-38 (10th Cir. 2017) ("Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings . . . a defendant is not barred from release because he is a deportable alien.") (quotation marks and citations omitted); *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015) ("We conclude that the district court erred in relying on the existence of an ICE detainer and the probability of Santos–Flores's immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure Santos–Flores's appearance pursuant to 18 U.S.C. § 3142(e).").

Mr. Ringel's substantial bail package is sufficient to ameliorate any risk of flight or danger. The Court should order his release accordingly.

## III. Conclusion

The government simply cannot carry its burden of demonstrating that the proposed combination of conditions presented here are insufficient to reasonably address any risks posed by Mr. Ringel's pretrial release. This Court should, therefore, order his release on these substantial conditions. *See* 18 U.S.C. § 3142(c) (the "judicial officer *shall* order the pretrial release of the person -- . . . (B) subject to the *least restrictive* further condition, or combination of conditions, that such judicial officer determines will reasonably assure . . . the safety of any other person and the community…") (emphasis added).

Respectfully submitted,

/s/ IH
Henry E. Mazurek
Ilana Haramati
Meister Seelig & Fein PLLC
125 Park Avenue, Suite 700
New York, New York 10017

*Counsel for Defendant Yehuda Ringel*

cc: Counsel of Record (*via ECF*)